572 S.E.2d 448

**In the Matter of Mariano Frank CRUZ, Respondent.**

**No. 25557.**

Supreme Court of South Carolina.

Submitted Oct. 10, 2002.

Decided Nov. 12, 2002.

Henry B. Richardson, Jr., and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Robert G. Price, of Columbia, for Respondent.

PER CURIAM:

In this attorney disciplinary matter, respondent and Disciplinary Counsel have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent conditionally admits misconduct and consents to a definite suspension from the practice of law for a period of eighteen months up to twenty-four months. We accept the agreement and suspend respondent for twenty-four months.[1] The facts as admitted in the agreement are as follows.

## *Facts*

### I. *Matter A*

On June 19, 1998, respondent was a partner in a law firm with another lawyer (Lawyer). During this time, the firm was retained to represent Client for injuries sustained in an automobile accident. Respondent requested that Lawyer assist him with the case. Lawyer negotiated a settlement for the insurance company to pay the policy limits of $100,000.

On July 21, 1999, respondent and Lawyer dissolved their partnership. Respondent then prepared, and had Client sign, a letter terminating Lawyer's representation of Client. Shortly thereafter, respondent contacted the insurance company adjuster stating that he and Client would settle her claims for the policy limits of $100,000 and sign mutual releases in exchange for a check written to respondent and Client. The adjuster subsequently sent a proposed settlement agreement and a release of all claims to respondent. Respondent replied by writing on the adjuster's letter, "I agree and consent to the above-listed terms," and signed the notation as "attorney for [Client]."

Despite the fact that she could not read, Client signed the release on the advice of respondent. Respondent did not read

---

1. Respondent was placed on interim suspension by order of this Court dated February 23, 2001. *In the Matter of Cruz,* 344 S.C. 27, 543 S.E.2d 536 (2001). Respondent's request that his twenty-four month suspension be made retroactive to the date he was placed on interim suspension is denied.

the release to Client or explain the legal significance of its terms. After executing the release, respondent contacted another insurance company regarding underinsured motorist coverage. However, the company refused to settle because the company and its insured had been released from all claims by the release signed by Client on respondent's advice. The release precluded Client from collecting underinsured coverage of up to $30,000.

Following the settlement of the claim, Lawyer filed suit against respondent, another attorney, and Client alleging that respondent failed to pay him his portion of the attorney's fee generated by the settlement of Client's claim. Respondent answered Lawyer's complaint on behalf of himself and Client. Since Client had a potential claim against respondent for his failure to secure underinsured motorist coverage, respondent's answering the suit on Client's behalf was a conflict of interest. Respondent failed to inform Client of the conflict and the potential claim against him. Respondent also failed to advise Client to seek the advice of independent counsel.

On May 19, 2000, and May 20, 2000, attorneys representing Lawyer wrote respondent raising concerns about the conflict of interest respondent had in representing both Client and himself in the lawsuit. Despite the receipt of these two letters, respondent failed to advise Client of the conflict of interest and failed to withdraw as her attorney.

On July 17, 2000, respondent was removed as counsel for Client by order of the circuit court and Client was advised to retain independent counsel. Respondent and his associate refused to cooperate with Client's new counsel despite his repeated attempts to obtain Client's file.

Despite the fact that he had been removed from representation of Client by order of the circuit court, on July 27, 2000, respondent prepared and advised Client to sign a document entitled "Revocation of all Power of Attorneys." Client had previously executed a power of attorney in favor of her son. Respondent informed Client that he would file the document, but failed to do so.

Also on July 27, 2000, respondent prepared an affidavit for Client to sign, that respondent intended to submit in support of his motion for summary judgment in the lawsuit brought by

Lawyer. The affidavit stated in part, "I am satisfied with the services of [respondent]. He negotiated my hospital lien of $80,000 to $40,000. Therefore, my portion of the settlement is $35,000 after paying the lien. I received more from the $100,000 than I would have received from an additicnal $30,000 underinsured motorist, since if I had recovered there, the hospital lien would not have been negotiated and I would have to pay the hospital $80,000." The affidavit further stated, "I have ratified the General Release."

The affidavit was an attempt by respondent to relieve himself of liability, both professional and financial, to Client. Further, respondent failed to explain the legal significance of the affidavit to Client and failed to advise her to seek independent counsel prior to signing it.

## II. *Matter B*

Respondent was retained to represent Client in a wrongful termination case. Client paid respondent an initial retainer fee of $300, plus $148 for the cost of a deposition. Respondent filed the action in federal court. However, respondent did not notify Client that he would be leaving his practice in South Carolina and relocating to North Carolina, and then California. Respondent failed to return telephone calls to Client and failed to communicate with her. Respondent closed his practice and subsequently moved without informing Client.

Respondent failed to return Client's file to her; however, Client eventually obtained her file from respondent's assistant, who, while licensed to practice law in California, was not licensed in South Carolina. Respondent had left his Client files with his assistant.

Respondent also failed to move before the United States District Court for leave to withdraw, or take any other action to protect Client's interests before leaving South Carolina.

After receiving Client's complaint, the Commission on Lawyer Conduct wrote respondent on September 20, 2000, requesting a reply within 15 days. On October 12, 2000, respondent replied that he wanted to file an amended reply after reviewing Client's file. On December 14, 2000, a Commission staff attorney wrote respondent requesting additional informa-

tion; however, respondent did not submit the amended reply nor did he respond to the staff attorney's letter.

### III. *Matter C*

Client and her husband retained respondent to file a bankruptcy action in the United States Bankruptcy Court for the District of South Carolina. On April 21, 2000, respondent filed a Chapter 7 action and a trustee was appointed. Respondent abandoned his law practice in South Carolina and moved out of state without notifying Client and without taking steps to protect Client's interests in the bankruptcy proceeding. Respondent also failed to take the necessary steps to protect Client's furniture. Respondent failed to reply to Client's inquiries about the case and did not return Client's file. On August 23, 2000, the Bankruptcy Court issued an order discharging the debtors and the trustee and closing the case. Respondent also left Client's file with his associate who was not licensed to practice law in South Carolina.

After receiving Client's complaint, the Commission wrote to respondent on November 27, 2000, seeking a reply. Respondent did not respond. The Commission sent respondent a second letter on January 9, 2001, again asking for a reply to the complaint and reminding respondent that failure to cooperate with an investigation could constitute a violation of the Rules of Professional Conduct. Respondent did not reply. On February 5, 2001, the Commission sent respondent a Notice of Full Investigation. Respondent still did not reply.

### IV. *Matter D*

In May 2000, Client, a resident of North Carolina, hired respondent to bring a quiet title action involving property she jointly owned in Myrtle Beach. Client paid respondent a fee of $1,750, by personal check, and signed the fee agreement respondent mailed to her. Respondent assured Client that the fee would be held in his trust account until earned and that any unearned portion of the fee would be returned to her.

Respondent failed to communicate with Client after receiving his fee and failed to reply to her telephone calls regarding the matter. Respondent did not file the quiet title action nor take any other action on Client's behalf. Respondent aban-

doned his law practice in South Carolina and moved out of state without notifying Client. Respondent failed to return Client's file to her or take appropriate steps to protect her interests when he left South Carolina.

Client eventually located respondent in October 2000 and respondent assured her that he would refund a portion of her money. In November 2000, respondent mailed Client a check, drawn on his wife's account, in the amount of $1,000. However, respondent stopped payment on the check without notice or explanation to Client.

Respondent failed to respond to letters sent by the Commission on December 15, 2000 and January 9, 2001. Respondent also failed to respond to the Notice of Full Investigation sent by the Commission on February 5, 2001. Respondent also left Client's file with his associate who is not licensed to practice law in South Carolina.

## V. *Matter E*

In May 1999, Client retained respondent to represent him in a bankruptcy matter and paid him a fee. At the time, Client was at least two payments behind on his mortgage and expressed to respondent that he did not want lose his home because it had belonged to his grandfather. However, respondent failed to advise Client that he should keep his mortgage payments current. Further, respondent failed to promptly file for relief from the remaining debts. During the delay, a foreclosure action was started against Client. Respondent received a settlement offer from the mortgage holder which incorporated payment terms that Client could not make. Respondent then filed a Chapter 7 bankruptcy action.

Respondent failed to communicate and respond to all the inquires of Client during the representation. As a result, Client retained the services of attorney Lucy McDow, who converted the case to Chapter 13. Had this not been done, Client would have lost his home. Respondent also failed to answer a motion filed by the mortgage holder and did not move for an extension of time to file the answer.

When Client terminated respondent's services, respondent failed to provide a full refund of the attorney's fees and did not provide any accounting as to how the fee had been earned.

Respondent did tender a check for $125, which included the following notation, "Termination of representation full refund." Attorney McDow returned the check to respondent with a request that it be re-issued without the "full refund" language; however, respondent refused. McDow then filed a motion to refund excessive legal fee and respondent filed a response in opposition to the motion. The Bankruptcy Court issued a consent order requiring respondent to refund $1,250 in attorney's fees by paying $75 per week to the Chapter 13 trustee. Lawyer failed to make any payments, and on August 30, 2000, the Bankruptcy Court issued an order finding respondent in willful contempt of the court's previous order, and required respondent to purge himself of civil contempt by paying the entire $1,250 to the trustee within seven days. The order also required respondent to pay Client's attorney's fees and costs of $470.70.

After receiving Client's complaint, the Commission wrote respondent on January 20, 2000, and respondent replied on March 2, 2000. Thereafter, the Commission appointed attorney Robert S. Hudspeth, Esquire, to conduct a preliminary investigation. Mr. Hudspeth requested that respondent provide him bank records relating to Client's case, but respondent failed to do so. A notice of full investigation was authorized by the Commission and mailed to respondent's Rock Hill address on September 13, 2000; however, it was returned as undeliverable. The notice was re-mailed on October 2, 2000, to respondent's California address. Respondent did not reply.

## VI. *Failure to Cooperate with Investigation*

After residing in California, respondent relocated to New Jersey and wrote to the Office of Disciplinary Counsel, requesting that all future correspondence to him be forwarded to an address in Hackensack, New Jersey. On March 12, 2001, the Office of Disciplinary Counsel procured from the Commission on Lawyer Conduct, a subpoena ducus tecum for five Client files and bank records. The subpoena was mailed to respondent's New Jersey address; however, respondent failed to respond to the subpoena, and did not provide the documents that were requested.

On March 26, 2001, respondent wrote the Office of Disciplinary Counsel, expressing a desire to discuss pending cases and to submit written replies. Thereafter, the Attorney General's Office sent copies of the notices of full investigation and letters of complaint regarding pending cases to respondent's New Jersey address. Respondent did not respond.

### *Law*

Respondent admits that his conduct violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (failing to provide competent representation); Rule 1.2 (failing to abide by the client's decisions concerning the objectives of representation); Rule 1.3 (failing to act with reasonable diligence and promptness while representing a client); Rule 1.4 (failing to keep a client reasonably informed about the status of a matter and failing to promptly comply with requests for information); Rule 1.7 (a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interests); Rule 1.9 (a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation); Rule 1.15 (failing to keep clients' funds in a separate account and failing to keep records of such funds); Rule 1.16 (failing to withdraw from representation when continued representation would violate the Rules of Professional Conduct); Rule 2.1 (failing to exercise independent professional judgment and render candid advice); Rule 3.2 (failing to make reasonable efforts to expedite litigation consistent with the interests of the client); Rule 8.1 (knowingly making false statements of material fact in connection with a disciplinary investigation and failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4, subsections (a) (violating the Rules of Professional Conduct); (c) (engaging in conduct involving moral turpitude); and (e) (engaging in conduct that is prejudicial to the administration of justice).

Respondent also admits that he violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a), subsections (1) (violating the Rules of Professional

56

Conduct); (3) (willfully violating a valid order of the Supreme Court, Commission or panels of the Commission in a proceeding under these rules, willfully failing to appear personally as directed, willfully failing to comply with a subpoena issued under these rules, and knowingly failing to respond to a lawful demand from a disciplinary authority); (5) (engaging in conduct prejudicial to the administration of justice and bringing the courts and the legal profession into disrepute); (6) (violating the oath of office taken to practice law in this State); and (7) (willfully violating a court order issued by a court of this state).

## *Conclusion*

We find that respondent's misconduct warrants a definite suspension. Accordingly, we accept the Agreement for Discipline by Consent and suspend respondent from the practice of law for twenty-four months. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.